# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| ANTHONY C. MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:08-CV-246 |
| v. | ) | |
| | ) | |
| RUSTY YORK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

## I. INTRODUCTION

Plaintiff Anthony C. Martin started this case under 42 U.S.C. §1983 with a scattershot *pro se* complaint stemming from an encounter with Fort Wayne police officers Daniel Royse, Richard Jennings, David Tinsley, Timothy Hughes, and Michael McEachern, on September 28, 2008. (Docket #1.) Ultimately, and at Martin's request, experienced counsel was recruited to represent him. (Docket #25.)

Now this case is before the Court on the Defendants' Motion for Summary Judgment. (Docket #35.) In response, Martin's counsel has narrowed the case, properly so, to the simple claim that during a purported investigatory stop, *Terry v. Ohio*, 392 U.S. 1 (1968), the officers used excessive force and detained him for an unreasonably long period of time, and thus deprived him of his Fourth Amendment rights. (Docket #37.) The response is supported by Martin's affidavit (Docket # 38-2) and that of his former girlfriend, Melinda Robinson (Docket # 38-3).

Those affidavits, however, sparked a motion to strike (Docket # 40), suggesting that a portion of each should be stricken. Although contested, the motion is essentially moot because

even with the allegedly improper statements excised, enough facts remain that the core of Martin's case–his contention that the police used unnecessary (and thus excessive) force during the so-called *Terry* stop and detained him too long–must proceed to trial.

Getting to that core requires some peeling away of the meritless claims that Martin put in his *pro se* complaint but which he does not advance and has apparently abandoned. That chore is the topic of the next section.

## II. MARTIN HAS ABANDONED HIS MERITLESS CLAIMS

Martin catalogued a number of claims in his *pro se* complaint, but in the face of a motion for summary judgment he offers no support for their continuation. For example, he alleges some direct claims under the First, Second, Fifth, Ninth, and Fourteenth Amendments, as well as some state law claims. The former fail for a variety of reasons but most fundamentally, because Martin offers no hint concerning how they may apply. *See Smith v. Ne. Ill. Univ.*, 388 F.3d 559, 569 (7th Cir. 2004) ("[An] undeveloped argument constitutes waiver."). The state law claims also die because Martin did not comply with the notice provisions of the Indiana Tort Claims Act. IND. CODE § 34-13-3-8; *Brown v. Alexander*, 876 N.E.2d 376, 380 (Ind. Ct. App. 2007) (stating that claims against government entities are barred by a failure to comply with the notice requirements under the Indiana Tort Claims Act).

In addition, summary judgment must be granted to Defendant Chief of Police York because Martin offers no facts suggesting personal involvement in any alleged constitutional deprivation. *See Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) (quoting *Kelly v. Mun. Courts of Marion County*, 97 F.3d 902, 909 (7th Cir. 1996) ("Individual liability under 42 U.S.C. § 1983 can only be based on a finding that the defendant caused the deprivation at

issue.")). There is also no indication that Chief York is liable as a supervisor. *See Jones v. City of Chicago*, 856 F.2d 985, 994-95 (7th Cir. 1988) ("The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.").

Furthermore, even if Chief York is being sued in his official capacity so that the real allegation is one of municipal liability, that claim also fails because Martin has not alleged that Chief York implemented an official policy or acquiesced in a department custom that was the "moving force" behind the alleged constitutional deprivation. *See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 692-94 (1978).

Finally, summary judgment must be granted concerning Martin's claim against the Fort Wayne Police Department because a police department cannot be sued under 42 U.S.C. § 1983. *See Sanders v. Town of Porter Police Dept.*, No. 2:05-cv-377, 2006 WL 2457251, at *3 (N.D. Ind. Aug. 22, 2006) (quoting *Jones v. Bowman*, 694 F. Supp. 538, 544 (N.D. Ind. 1988) ("A city's police department is merely a vehicle through which the city government fulfills its policy functions and is not a proper party defendant.")).

### III. FACTUAL AND PROCEDURAL BACKGROUND[1]

Around midnight, on September 29, 2008, Fort Wayne police officers Daniel Royse, Richard Jennings, David Tinsley, Timothy Hughes, and Michael McEachern were dispatched as a result of a call about "suspicious activity" at 1115 McKee Street after a neighbor reported

---

[1] The facts are viewed in a light most favorable to Martin as the non-moving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). The Defendants offer a completely different version of events, essentially denying any physical contact with Martin.

3

"hearing glass break and a man's voice." (McEachern Aff. ¶ 5.) While the officers were checking nearby vacant homes, Officer Jennings and at least one other officer approached a parked SUV in an alley off Smith Street. (McEachern Aff. ¶¶ 6-10; Robinson Aff. ¶¶ 6-7; Martin Aff. ¶ 9.)

At that time, Martin was retrieving items from the vehicle, which belonged to his mother and was parked outside the home of his girlfriend, Melinda Robinson. (Martin Aff. ¶ 9; Robinson Aff. ¶¶ 6-7.) At least two officers grabbed Martin and threw him to the ground where he was handcuffed and confronted by a barking police dog. (Martin Aff. ¶¶ 9-10.) One police officer then did a pat down while another pushed Martin's head into the ground. (Martin Aff. ¶¶ 9-10; Robinson Aff ¶ 9.) At some point, Robinson exited the house and observed the scene, but was ordered back inside by the officers. (Martin Aff. ¶ 14.)

Officers positioned the handcuffed Martin onto the hood of a police car and removed the contents of his pockets. (Martin Aff. ¶¶ 11-12.) He was then placed inside the police car without explanation. (Martin Aff. ¶¶ 11-12.)

After some minutes, the officers released Martin and told him to leave the area even though he told them that he was staying at the house where the SUV was parked.[2] (Martin Aff. ¶¶ 12-13.) Martin was never told he was being arrested, and in fact, never was arrested concerning the events of that night. (Martin Aff. ¶ 16.) Later, when Martin returned to his girlfriend's house at about 2:30 a.m., he appeared very dirty, had scrapes on his face, and was holding his back in pain. (Robinson Aff. ¶¶ 12-13.)

---

[2] The record does not reflect how long the officers held Martin in the car, but Robinson reports that thirty minutes after she saw Martin on the ground, everyone was gone. (Robinson Aff. ¶ 11.)

## IV.  STANDARD OF REVIEW

Summary judgment may be granted only if there are no disputed genuine issues of material fact.  *Payne*, 337 F.3d at 770.  When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder."  *Id.*  The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial."  *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).  If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted.  *Payne*, 337 F.3d at 770.  A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as  "summary judgment cannot be used to resolve swearing contests between litigants."  *Id.*  However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

## V.  DISCUSSION

The thrust of Martin's case is that no force or restraint should have been applied during the investigatory stop he experienced, let alone the level and type of force he describes.  He also complains that he was detained for an unreasonably long period of time before being told to leave.  And given the facts he advances in opposition to the motion for summary judgment, where every fact and reasonable inference must fall in Martin's favor, the Defendants' motion faces an uphill task.

For example, Martin asserts that the police officers, without cause, threw him to the

ground, smashed his head into the dirt, handcuffed him, and ultimately detained him in a police car. In sharp contrast, the officers depict a benign event, claiming that they only briefly questioned Martin and never had physical contact with him.

This leaves the Defendants with essentially arguing that even under Martin's version of the facts, no reasonable jury could conclude that a Fourth Amendment violation had occurred. And since both Martin and the Defendants describe the incident as being governed by *Terry*, the Court will begin in its discussion there.

At the outset, Martin does not challenge the lawfulness of the initial stop. After all, the officers were apparently going through the neighborhood after the report of a possible break-in and found Martin outside and in the vicinity. These facts at least support the initiation of a brief investigatory stop, as the officers had some "reasonable suspicion supported by articulable facts that criminal activity [was] afoot." *United States v. Rucker*, 348 F. Supp. 2d 981, 1000 (S.D. Ind. 2004) (citing *Terry*, 392 U.S. at 30).

The critical point of departure comes with what came next, given that the Court "must determine whether additional actions and a continued detention were reasonably related to the circumstances that justified the original stop." *Bowden v. Town of Speedway*, 539 F. Supp. 2d 1092, 1099 (S.D. Ind. 2008) (citing *United States v. Glenna*, 878 F.2d 967, 971 (7th Cir. 1989)). It is at this juncture that the stories diverge, as the Defendants stoutly maintain that they never even touched Martin, contrary to his depiction of a full-fledged assault.

What is important, however, is that the Defendants do not argue that they possessed a "reasonable and articulable suspicion that [Martin] was involved in some sort of criminal activity" the minimal requirement for "additional actions . . . [or] continued detention." *Id.*

6

(citing *Terry,* 392 U.S. at 21-22). This proposition is illustrated by the testimony of Officer Jennings, who determined almost immediately that Martin was not involved in the alleged break-in. (Jennings Aff. ¶ 13.)

And even more importantly, the Defendants do not argue that they had reason to believe that Martin was armed or dangerous or that they had some legitimate concern for their safety. To the contrary, according to the Defendants, they were so seemingly unconcerned about Martin (and his involvement in the purported break-in) that they never searched his vehicle, promptly told him to leave, and continued with their investigation. (Jennings Aff. ¶ 13; McEachern Aff. ¶ 13.)

In short, handcuffing and temporarily detaining someone at a *Terry* stop requires a showing that either the circumstances, or the person, or both, were particularly dangerous. *See Bowden*, 539 F. Supp. 2d at 1101; *United States v. Stewart*, 388 F.3d 1079, 1084-85 (7th Cir. 2004). Thus, the suspicion at the inception of Martin's stop (which soon dissipated) cannot form the basis or justification for the physical force, restraint, or detention that (he says) followed.

Martin, of course, must still show personal involvement in the alleged Constitutional deprivation, *Palmer,* 327 F.3d at 594, and on that score he does not say which of the five officers actually used force or detained him. Granting to him every inference, however, it can be reasonably inferred that all the officers were either involved in the alleged deprivation or failed to intervene to stop it from occurring. *See Yang v. Harder*, 37 F.3d 282, 284 (7th Cir. 1994) ("An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested,

or (3) that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring.") (emphasis in original).

Consequently, a jury could conclude on this record, if they believe Martin's version of the facts, that the individual officers violated his Fourth Amendment rights by restraining his liberty without either reasonable suspicion, *Terry*, 392 U.S. at 30, or probable cause. *Bowden*, 539 F. Supp. 2d at 1099. Accordingly, the motion for summary judgment must be denied unless, as the Defendants argue, they are entitled to qualified immunity.

Turning to the question of qualified immunity, the officers essentially argue that they did not violate Martin's rights and that in any event, those rights were not clearly established at the time of the incident. *See, e.g.*, *Pearson v. Callahan*, 129 S. Ct. 808, 815, 823 (2009). The problem with the Defendants' argument is that it relies on disputed facts, and under Martin's facts, the officers are not entitled to qualified immunity because it was well established before September 29, 2008, that physical restraint and prolonged detention may not be applied against an unarmed, seemingly non-violent person during a *Terry* stop where there is no indication the person was involved in criminal activity. *Bowden*, 539 F. Supp. 2d at 1100-01; *see also Stewart*, 388 F.3d at 1084-85. Thus, with the facts viewed in a light most favorable to Martin, the officers are not entitled to qualified immunity.

## VI. CONCLUSION

For the above reasons, Defendants' Motion to Strike (Docket #40) is deemed MOOT. The Defendants' Motion for Summary Judgment (Docket #35) is GRANTED, except that the motion is DENIED concerning Martin's claim of physical restraint and prolonged detention

8

against Fort Wayne police officers Daniel Royse, Richard Jennings, David Tinsley, Timothy Hughes, and Michael McEachern in their individual capacity.

SO ORDERED.

Enter for this 2nd day of March, 2010.

S/ Roger B. Cosbey<br>
Roger B. Cosbey,<br>
United States Magistrate Judge