# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| ANTHONY C. MARTIN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:08-cv-246 |
| | ) |
| DANIEL ROYSE, RICHARD JENNINGS, DAVID TINSLEY, TIMOTHY HUGHES, and MICHAEL McEACHERN, | ) ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

### I. INTRODUCTION

Anthony Martin lost a two day jury trial on his claims under 42 U.S.C. § 1983.[1] For a trial that was relatively short and free of objections, Martin has found a number of things to complain about in his wide-ranging Motion for a New Trial. (Docket # 82.) The motion has been fully briefed with Martin actually filing two Reply Briefs. (Docket # 87, 88.) As can be seen in the next section, obtaining a new trial or overturning a jury verdict is not easy, and Martin does not come close to accomplishing the task.

Accordingly, Martin's Motion will be DENIED.

### II. FACTUAL AND PROCEDURAL BACKGROUND

Martin's § 1983 case stems from an encounter with Ft. Wayne police officers Daniel Royse, Richard Jennings, David Tinsley, Timothy Hughes, and Michael McEachern, on September 28, 2008.

---

[1] The Court recruited an experienced civil rights litigator to represent Martin early on in the case. That attorney recently withdrew as Martin's counsel and the current motion was filed by Martin *pro se*.

After court-appointed counsel appeared for Martin, he properly and wisely narrowed his case to the simple claim that during a purported investigatory stop, *see Terry v. Ohio*, 392 U.S. 1 (1968), the officers violated his Fourth Amendment rights by restraining his liberty without reasonable suspicion of criminal activity and without probable cause, and did so by using excessive force. When summary judgment was denied concerning those claims, the case proceeded to trial.

At trial, two distinctly different versions of the events of that night were told. Martins' version, supported by the testimony of his former girlfriend, Melinda Robinson, alleged that around midnight, on September 29, 2008, Fort Wayne police officers Daniel Royse, Richard Jennings, David Tinsley, Timothy Hughes, and Michael McEachern were dispatched as a result of a call concerning "suspicious activity" at 1115 McKee Street, after a neighbor reported "hearing glass break and a man's voice." While the officers were checking nearby vacant homes, Officer Jennings and some of the other officers approached a parked SUV in an alley off Smith Street.

Martin contends that having just returned home from a party, he was retrieving items from the vehicle, which was parked outside the home of his girlfriend, Melinda Robinson. He contends that one or two police officers grabbed him, threw him to the ground and handcuffed him while a barking police dog threatened nearby. Robinson testified that at some point she exited the house and observed Martin on the ground, but was ordered back inside by the officers.

After some minutes, and after it was determined that Martin was not involved in any break-in, he was released and told to leave the area. After a couple of hours, he returned to Robinson's home where he complained of back pain and she observed scrapes on his face.

In contrast, each of the testifying officers described a relatively benign event.[2] In short, the officers testified that Officer Jennings found Martin asleep in the front seat of an SUV accompanied by a black woman.[3] They testified that upon determining that Martin was not involved in any alleged break-in, he was told to leave and that although he then became loud and belligerent, he eventually left in the SUV. Jennings also testified that despite Robinson's claim that she was present, he never saw her before the trial. Each officer likewise testified that Martin was only briefly questioned and that they had no physical contact with him.

After the Court's *in limine* rulings, the trial was straight-forward; *voire dire* was relatively routine with each juror asked about such things as friends or family in law enforcement and whether they would give more credit or less credit to the testimony of a police officer merely because of that position. Each juror also confirmed that they could be fair and impartial. Both sides exercised peremptory challenges during jury selection and neither side objected to the Court's preliminary or final jury instructions. The jury was instructed that communications concerning the trial and outside of the Courtroom, either in person or electronically, were prohibited (Preliminary Instruction No. 2) and in final instruction No. 12, they were told: "anything that you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded." These admonitions were repeated at the close of the first day of the two day trial.

---

[2] Defendant Daniel Royse left the Fort Wayne Police Department for other employment following the event and was not present at trial. Nevertheless, the extent of his involvement in the incident was questioned given the two completely different physical descriptions of Royse provided by Martin and Jennings. Thus, it is untrue, as Martin alleges, that Royse was never mentioned at trial. And although Martin claims some unspecified prejudice from Royse's absence, he did not issue a trial subpoena for him, did not object to his absence, and the alleged prejudice is not apparent.

[3] Melinda Robinson, who testified that she was present, is a Caucasian female.

Furthermore, there were few evidentiary objections. Counsel for the Defendants did make some inquiry concerning Martin's claim of emotional distress, but given Martin's testimony that his emotional distress began and ended that night, the cross-examination was limited upon objection by Martin's counsel.

Ultimately, after deliberating for a couple of hours, the jury returned a verdict in favor of the Defendants and against Martin and a judgment was entered accordingly. Martin now raises essentially five challenges concerning the trial.

### III. STANDARD

Federal Rule of Civil Procedure 59 is the procedural vehicle that allows a trial court to order a new trial or to alter or amend a judgment.[4] Under Rule 59(a), a party only can obtain a new trial if the verdict is contrary to the weight of the evidence, that results in a shocking "miscarriage of justice," or if credible evidence is discovered after the trial. *Latino v. Kaizer*, 58 F.3d 310, 315 (7th Cir. 1995) (citing *Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991)); *Daniels v. Pipefitters' Ass'n Local No. 597*, 983 F.2d 800, 802-03 (7th Cir. 1993).

A somewhat broader standard exists under Rule 59(e), and allows a Court to alter or amend a judgment when, for instance, there is newly-discovered evidence, an intervening change in the law (something Martin does not allege), or a manifest legal error. *Cosgrove v. Bartolotta*, 150 F.3d 729, 732 (7th Cir. 1998).

Establishing a manifest legal error is tough to do; essentially, it requires a "'wholesale disregard, misapplication, or failure to recognize controlling [legal] precedent.'" *Oto v.*

---

[4] Although Martin requests relief under Rule 59(e), he appears to be asking for a new trial, which falls under Rule 59(a); to complete the record, both sections will be considered in this analysis.

*Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F.Supp. 1063, 1069 (N.D. Ill. 1997). These are high standards, intentionally so, and as discussed later, Martin falls far short of satisfying them.

### IV. ANALYSIS

A. Alleged Submission of a Prejudicial "Description Chart"

Martin first alleges that a Description Chart accompanied the exhibits to the jury room when the jury retired to deliberate and that it referred to some of his prior felony convictions.[5]

On this point, Martin is mistaken, as the exhibits that went to the jury room were accompanied by an Exhibit and Witness List (DE# 73) and it did not contain any such information; in fact, at the Court's direction, counsel jointly reviewed the List and exhibits (to confirm that they were accurate and complete) before they were ever sent to the jury. In addition, the Court has reviewed both the exhibit book and the List and neither contains the information Martin alleges. Since this allegation is factually baseless, and because the List was otherwise reviewed and not objected to at trial, Martin's motion fails on this point.

B. Alleged Submission of Prejudicial Evidence

Martin argues that counsel for the Defendants presented unspecified but prejudicial testimony that, he claims, the parties previously agreed not to offer. (Pl.'s New Trial Mot. 2). It is unclear what Martin is referring to here, but the Final Pretrial Order (Docket # 50) contains no such agreement and no stipulation on this point was ever presented to the Court. Martin's attorney, of course, was free to object during the trial and if no objection was made then a waiver has occurred under Federal Rule of Evidence 103. Thus, this challenge fails.

---

[5] Martin's prior felony convictions were never introduced into evidence, nor used to impeach his testimony.

C. Alleged Withholding of Internal Affairs Documents

Martin further contends that the Defendants withheld internal affairs documents; essentially, Martin points to the complaint he lodged with the Fort Wayne Police Department and its response, both of which he maintains constitute newly discovered evidence. (Pl.'s New Trial Mot. 5). Even if his allegations are correct—which the Defendants deny—the documents are not newly discovered evidence.

The test for new evidence is a stiff one; "a party must show that: (1) it has evidence that was discovered post-trial; (2) it had exercised due diligence to discover the new evidence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that a new trial would probably produce a new result." *Environmental Barrier Co. v. Slurry Systems, Inc.*, 540 F.3d 598, 608 (7th Cir. 2008).

At the outset, it is apparent that the materials he now believes are so important were either prepared by Martin or received by him, so it is hard to accept his characterization that they are "newly discovered." Stated another way, he knew the documents existed, he may even have had them in his possession, and therefore they "could and should" have been presented earlier if they were relevant or probative. *Sigworth v. City of Aurora*, 487 F.3d 506, 512 (7th Cir. 2007).

Moreover, and although this point is unclear, it appears that Martin intended to use the documents for impeachment, but materials that are "merely cumulative or impeaching" do not constitute "newly discovered evidence." *Environmental Barriers*, 540 F.3d at 608.

Finally, the relevance of these materials is far from clear, *see* Fed. R. Evid. 401, 402, and given the weighing of Federal Rule of Evidence 403, it is hard to say that they would have been admissible against police officers sued in their individual capacity; so it is highly unlikely that they would have led to a different result. *Id*. In fact, the jury was aware, for instance, that Martin

6

complained of the officer's conduct, as he testified that when he left the scene he went to a police station to file a complaint, so the evidence, if anything, is merely cumulative, and not "newly discovered." *Environmental Barriers*, 540 F.3d at 608. Consequently, Martin's claim that a new trial is necessary because of newly discovered evidence is rejected.

D.  Alleged Attack on Plaintiff's Credibility

Martin argues that Defendants carried out an impermissible attack upon his credibility, particularly when they cross-examined him concerning his mental health records. Once again, Martin argues that this conduct violated an agreement (as noted previously, the so-called agreement was never made part of the record) and also violated Federal Rules of Evidence 401, 402, and 609(a)(b). (Pl.'s New Trial Mot. 2). As an initial matter, impeachment and attacking credibility is, generally speaking, a legitimate trial tactic. *See* Fed. R. Evid. 607; *U.S. v. Dweck*, 913 F.2d 365, 369 (7th Cir. 1990). Moreover, Martin clearly made his mental and emotional pain and suffering an issue, so proper questioning about prior treatment, within the bounds of Federal Rule of Evidence 403, was certainly permissible under Federal Rules of Evidence 401 and 402.

Furthermore, contrary to Martin's understanding, this line of inquiry had nothing to do with his punitive damages claim, which he dropped before trial, and his actual mental health records were never admitted into evidence. Finally, Martin's citation to Federal Rule of Evidence 609 is similarly unavailing, as that provision deals with evidence of prior convictions, not mental health records. In the final analysis, Martin is not entitled to a new trial on this ground either.

E. Alleged Juror Misconduct

Martin also claims that he deserves a new trial because one juror (who he seems to identify as Juror #6) was involved in Internet conversations during the trial and that a non-juror, who he names, knows something about it, although no details are offered. (Pl.'s New Trial Mot. 2, 4-5). He also poses unsupported and shadowy allegations concerning more juror contact, again, without particulars. (Pl.'s Reply 2-3). In his latest filing (his second reply brief), Martin adds even more allegations about Juror #6, that the juror allegedly has unspecified family ties to both the Allen County Sheriff's Department (who Martin has previously sued) and the Fort Wayne Police Department and that none of this was ever revealed during *voir dire*.

Of course, juror misconduct can provide grounds for a new trial, *Remmer v. United States*, 347 US 227, 229-30 (1954); 12 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE, § 59.13[2][e][iii][B]-[D] (3d. 1997), especially if the misconduct results from an "extraneous influence." Even so, juror misconduct involving external influences is routinely subject to a "harmless error" analysis, such that the intrusion must have some prejudicial impact that affects the outcome of the case. *United States v. Warner*, 498 F.3d 666, 678-79 (7th Cir. 2007).

Although an extraneous contact claim "may require some sort of hearing to determine whether" the communications seriously prejudiced the jury, *Artis v. Hitachi Zosen Clearing, Inc.*, 967 F.2d 1132, 1141 (7th Cir. 1992), this "is not a hard and fast rule," *United States v. Spano*, 421 F.3d 599, 605 (7th Cir. 2005), as such a procedure is reserved for "colorable" claims with evidentiary support. *United States v. Barshov*, 733 F.2d 842, 851 (11th Cir. 1984). The decision whether to hold such a hearing rests in the discretion of the trial court. *McDonough*

8

*Power Equip. v. Greenwood*, 464 U.S. 548, 556 (1984); *id.* at 556-57 (Blackmun, J., concurring).

The decision is also informed by the assumption "that juries follow a court's instructions," which can cure or decrease the chance of jury bias. *3M v. Pribyl*, 259 F.3d 587, 600 (7th Cir. 2001). Non-speculative evidence is required to overturn the "'presumption of jury impartiality.'" *Whitehead v. Cown*, 263 F.3d 708, 722 (7th Cir. 2001) (quoting *Barshov*, 733 F.2d at 851).

Moreover, the jury was instructed that they were not to consult "reference materials...the internet, websites, blogs" and they were not to communicate with others about the case on their "cell phone, through e-mail, Blackberry, iPhone, text messaging, or on Twitter, through any blog . . . [.]" (Prelim. Jury Instruction No. 2 at 2-3.) They were also told in the final instructions to disregard anything they may have seen or heard outside the courtroom. Martin's unsupported allegations to the contrary do not overcome the presumption that the jury followed these instructions. *3M*, 259 F.3d at 600.

Ultimately, the Court is left with nothing more than the bald assertion that one juror "had personal contact or personal information . . . that could have persuaded their [sic] mind." (Pl.'s New Trial Mot. 5.) Martin's unsubstantiated speculation does not reveal any contact or the nature of the purported communication, let alone that it was prejudicial. *See Barshov*, 733 F.2d at 851. Consequently, no hearing or new trial is warranted.

This leaves Martin's most recent unsupported accusation concerning Juror #6; in essence a claim that that juror was intrinsically influenced because of unspecified family ties to both the

Allen County Sheriff's Department and the Fort Wayne Police Department that were not revealed during *voir dire*.[6]

Pre-existing juror bias, however, "does not require an evidentiary hearing, let alone a new trial." *Arreola v. Choudry*, 533 F.3d 601, 606 (7th Cir. 2008) (juror's failure to disclose past ankle sprain in a case dealing with that medical issue did not require an evidentiary hearing). The question of potential juror bias was thoroughly explored during *voir dire* and the Court specifically inquired whether any juror had family members employed by the City of Fort Wayne or in law enforcement employment. In addition, each juror confirmed that they could serve fairly and impartially and would give no greater or lesser weight to the testimony of a police officer simply because of that position. Martin's unsupported accusations do not suggest that either a hearing or a new trial should be held.

Nevertheless, Martin also accuses Juror #6 of dishonesty for failing to disclose family relationships with the two Police Departments. To "obtain a new trial on this basis, a party must show 'that a juror failed to answer honestly a material question on *voir dire*,' and, if successful, then must demonstrate that 'a correct response would have provided a valid basis for a challenge for cause.'" *Arreola*, 533 F.3d at 607 (quoting *McDonough*, 464 U.S. at 556). As just noted, Martin does not fulfill the first requirement.

Even if it could be assumed, however, that Juror #6 lied or failed to disclose some family ties to the Sheriff's Department or the Fort Wayne Police Department, Martin's claim would not be advanced. In *Zekra v. Green*, 49 F.3d 1181 (6th Cir. 1995), the Sixth Circuit applied

---

[6] The Court has reviewed Juror #6's Jury Questionnaire (signed under the "penalty of Perjury") and particularly Question 20(A), where he checked "No" when asked if any member of his immediate family has received law enforcement training.

*McDonough*'s two pronged analysis to a case similar to Martin's. There, after returning a verdict for the defendant police officer in a § 1983 excessive force case, a juror told the plaintiff, plaintiff's counsel, and one other juror that he had purposefully lied or concealed from the Court during *voir dire* the fact that he had friends (and maybe even relatives) on the police force. *Id*. at 1183-84. Even though this circumstance was confirmed at a post-trial hearing, the District Court still denied the Plaintiff a new trial because, applying *McDonough*, the information would not have provided grounds for challenging the juror for cause. *Id*. at 1184. On appeal, the Sixth Circuit affirmed, noting that in order to obtain a new trial, a party must offer more than the possibility that if given the chance, they might have removed the prospective juror. *Id*. at 1185.

Therefore, even if Juror #6 lied or failed to reveal the alleged family ties (neither of which Martin has shown), a new trial would still not be warranted because that would not have been grounds for a challenge for cause. *Id.* Indeed, Martin has not alleged that he would have challenged Juror #6 for cause. Thus, since there is no evidence of juror misconduct, Martin's motion must be denied.

## V. CONCLUSION

One final matter deserves comment and that is Martin's recently expressed dissatisfaction with the efforts of his appointed counsel, viewed with the benefit of hindsight. At the outset of the case, Martin requested, as he always does, the appointment of counsel. The Court granted that request in this instance and recruited an experienced, top-notch civil litigator, who proceeded to appropriately narrow Martin's hodge-podge of a case, filled as it was with meritless claims, to those that were potentially winnable.

This is not to say that what was left of Martin's case was particularly strong or compelling; indeed, the case presented challenges that any attorney would have found difficult to overcome. In any event, counsel made proper tactical and strategic decisions throughout the case that put Martin's case in the best possible light. As expected, the performance of counsel at trial was outstanding and although Martin is now belatedly critical, it is doubtful that any attorney could have done a better job.

Accordingly, because Martin received a fair trial and since the verdict was consistent with the evidence, his Motion for a New Trial and to Alter or Amend Judgment (Docket #82) is DENIED.

SO ORDERED.

Enter for June 11, 2010.

S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge